**GREEN RIVER GAS COMPANY, INC. and John Vogler and Margie K. Vogler, Appellants,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee.**

Court of Appeals of Kentucky.

Oct. 21, 1977.

Cecil Davenport, Louisville, Harold M. Streets, Greenville, for appellants.

David L. VanZant, Elizabethtown, C. Dant Kearns, Louisville, for appellee.

Before MARTIN, Chief Judge *, and HOWARD, COOPER and REYNOLDS, JJ.

COOPER, Judge.

This is an appeal from a judgment in the Hardin Circuit Court denying relief to the appellants and granting certain relief to the appellee as a result of the alleged failure of the appellee to sign a performance bond with the appellants for the City of Elizabethtown.

This case involves the second separate trial of an original action between the City of Elizabethtown, plaintiff in the lower court, and Green River Gas Company, Inc., (hereinafter called Green River Gas) defendant, and the United States Fidelity and Guaranty Company, (hereinafter called U. S. Fidelity) defendant; involving cross-claims between the Green River Gas and the U. S. Fidelity.

In August, 1970, the City of Elizabethtown authorized the taking of bids for the expansion of the city-owned natural gas system.

Green River Gas, whose principal owner is John Vogler, submitted a bid on the project. It was required to post a bid bond with surety with the bid. The Green River Gas contacted the appellee, U. S. Fidelity, for the purpose of securing the bid bond. The U. S. Fidelity issued the bid bond, but required the Green River Gas to furnish a Master Surety Agreement, along with other conditions.

The Master Surety Agreement and the bid bond are the only two contracts entered into between these parties. The Master Surety Agreement provides, in part, that the Agreement applies to all bonds signed by the U. S. Fidelity either before or after the execution of the Agreement.

The Agreement further provides that the signatories shall indemnify and exonerate the U. S. Fidelity from any loss resulting from them having acted as surety on a bond for Green River Gas.

Further, the Agreement states that the U. S. Fidelity can decline to sign any bond requested by the indemnitors including a performance bond after signing a bid bond.

On September 13, 1971, it was determined that the Green River Gas was the low bidder. Green River Gas then asked the U. S. Fidelity to provide the performance bond.

Upon further investigation, the U. S. Fidelity learned that another company in

* Heard oral argument but disqualified himself before a decision was reached.

which the Voglers were interested had had a surety loss with the Home Insurance Company. Mr. Milby, the agent of Green River Gas who dealt with the U. S. Fidelity agent, stated that he was not aware of this prior surety claim and that such a claim would be significant in the writing of surety bonds. Further, the U. S. Fidelity learned that the spread between the Green River Gas bid and the next lowest bidder was more than 10%. The U. S. Fidelity used a 10% spread as a guide in determining whether a contractor had left too much money on the table in his bid and in determining whether there was risk to the surety associated with a bid where the spread exceeded 10%.

The U. S. Fidelity suggested to Vogler that if he could put up sufficient collateral, they would agree to sign Green River Gas Co.'s performance bond. Vogler declined to do this.

When Green River Gas was unable to timely file a performance bond, it was declared in default and judgment was entered by the trial court in favor of City of Elizabethtown against the U. S. Fidelity in the amount of $35,891.65.

The final judgment of the lower court provided in part as follows:

1. That the crossclaim of Green River Gas Company, Inc., against United States Fidelity and Guaranty Company be and the same is hereby dismissed with prejudice.

2. That United States Fidelity and Guaranty Co. shall have judgment against Green River Gas Co., Inc. John F. Vogler and Margie K. Vogler, his wife, for indemnity for all liabilities, losses and expenses including court costs and counsel fees; and any payments resulting from the supersedeas of the judgment entered herein on October 7, 1975; actually incurred by United States Fidelity and Guaranty Company by reason of it having executed as surety the Bid Bond given to the City of Elizabethtown by Green River Gas Company, Inc., as principal, on the project generally known as the Cecilia, Hardin County, Kentucky Underground Natural Gas Storage Facility.

3. For its costs herein expended.

It appears that all of this litigation is brought about as the result of the failure of the U. S. Fidelity to sign the performance bond for Green River Gas. The only issue to be determined by this Court is:

WHETHER A SURETY COMPANY MAY ENTER INTO A CONTRACT WITH A CONTRACTOR TO POST A BID BOND AND, AFTER THE CONTRACTOR IS SUCCESSFUL IN BIDDING THE PROJECT, DECLINE TO POST A PERFORMANCE BOND?

If this question is answered in the affirmative, all other questions become moot in this case.

No guiding Kentucky authority has been cited by counsel for either side in this matter.

The Master Surety Agreement provides that its conditions apply to bonds written before and after execution of the Agreement. Thus, its provisions would apply irrespective of the date the Agreement was signed by Green River Gas and the Voglers. Russell Edward Davis, agent for the U. S. Fidelity, testified that the signing of the Master Surety Agreement was a condition to his having issued the bid bond and that Vogler had agreed, by telephone, that the Agreement would be signed in consideration of the issuance of the bid bond. The trial court, as the trier of fact, found that the Master Surety Agreement was signed by Green River Gas and the Voglers as a part of the transaction to secure the bid bond and as a consideration for the issuance of the bid bond.

The Surety Agreement contemplated occurrence of this very situation where a bid bond would be issued but a performance bond would not be issued. It recognized that the issuance of a bid bond is a separate and distinct transaction from the issuance of a performance bond. The Agreement provides that the surety is not required to execute any bond, and specifically is not

required to execute a performance bond merely because it had executed a bid bond.

The parties acknowledge when they signed the Master Surety Agreement that U. S. Fidelity would have no obligation to execute any performance bond, if it were called upon to do so.

The evidence established that the bid submitted by Green River Gas was $530,198.31 and that the next lowest bidder submitted a bid in the amount of $625,637.63, or a difference of $95,439.32. The testimony of Mr. Reading, who was then Branch Manager of U. S. Fidelity's Louisville office, was that U. S. Fidelity and other sureties use, as a criterion to determine elements of risk in writing a surety bond, the percentage spread between bids. With U. S. Fidelity a 10% spread requires Home Office review. Here, since the difference in bids was substantially greater than 10%, the writing of a performance bond became a matter of review in U. S. Fidelity's Home Office. It was determined then that the Voglers, through another business enterprise had had a surety claim involving the Home Insurance Company. Mr. Milby testified that he was unaware of this in his transactions with the U. S. Fidelity agent. Notwithstanding this U. S. Fidelity would have executed the performance bond had the Voglers provided sufficient collateral to minimize the risk that U. S. Fidelity felt it may be exposed to by signing the bond. Vogler was asked to put up $90,000 cash collateral and he declined.

The trial court, on the basis of this evidence, concluded that the demands of U. S. Fidelity were not unreasonable and that U. S. Fidelity acted in good faith with the indemnitors.

We have examined the record in this case, and have determined that the trial court was correct in deciding that a surety company may post a bid bond and later decline to sign a performance bond for the same project; and that all other questions were answered correctly based on this finding.

The judgment is affirmed.

All concur.